Filed 5/1/25  Patten v. Torosian CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SUSAN PATTEN, | F087603 |
| Plaintiff and Respondent, | (Super. Ct. No. 15CEPR00528) |
| v. | |
| DAVID TOROSIAN, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Adolfo M. Corona, Judge.

David Torosian, in pro. per., for Defendant and Appellant.

Lloyd Winter Law, Jody L. Winter and Jennifer J. Panicker, for Plaintiff and Respondent.

-ooOoo-

# <u>INTRODUCTION</u>

Appellant David Torosian appeals from a judgment by the probate court in favor of respondent, Susan Patten, pertaining to a trust established by their father, Amos Der Torosian.[1] The probate court's judgment decreed the following: (1) while David was serving as the successor trustee of the trust, he breached his fiduciary duties; (2) David was therefore properly removed as the successor trustee in 2016, and the order of removal was approved and ratified by the probate court's judgment; (3) as successor trustee, David failed to distribute a parcel of real property to Susan (the Alamos property), in accordance with the terms of the trust; (4) proceeds from the sale of the Alamos property by David were ordered to be distributed to Susan; (5) David would be surcharged for the fair rental value of the Alamos property not collected by him while he was serving as successor trustee; (6) a grant deed purporting to transfer a property on Villa Avenue (the Villa property), from David to himself was invalid, as this asset belonged to the trust; (7) David, who has lived rent free at the Villa property since 2009, would be surcharged the fair rental value of his occupancy; and (8) Susan's attorney fees and other costs incurred would be surcharged against trust distributions to David.

David raises the following claims on appeal. First, he contends that Susan's claims that he breached his fiduciary duty while serving as the successor trustee were time-barred. Second, he asserts that the probate court erred by concluding that certain real and personal property, including the Villa property, belonged to the trust. Third, David argues that the court erred in finding that he breached his fiduciary duty while serving as the successor trustee. Fourth, he contends that the court erred with respect to the nature and extent of the damages it determined that he owed because of his breach of duty. David specifically asserts that not only did he act in good faith, which should excuse his liability for damages, his case should be remanded back to the lower court so

---

[1] Because some of the parties share the same last name, we refer to them by their first names throughout this opinion. No disrespect is intended.

that he may furnish records to support his claim that he is entitled to credits for improvements that he made to the Villa property. Finally, David challenges the court's statement of decision and the adequacy of the record on appeal. Finding his contentions meritless, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Amos had three children: Susan, Michael, and David. Susan and David are both living and are parties to this appeal. In 1999, Amos simultaneously executed a trust (the trust) and a pour-over will, naming Susan as the first successor trustee.[2] The estate documents provided that upon Amos's death, certain personal property should be divided equally among his children, but that the Alamos property should be distributed to Susan, with David and Michael receiving assets equal in value to the Alamos property.

On April 8, 2009, Amos passed away. Thereafter, Susan declined to serve as the successor trustee. Michael, who was named as the second alternate trustee, also declined to serve. David, the third alternate trustee, was thus appointed to serve as the successor trustee.

### Susan's Petitions

On May 21, 2015, Susan filed a petition of beneficiary to compel trustee accounting (Prob. Code,[3] § 17200, subd. (b)(7)), for removal of trustee and appointment of successor trustee (§ 15642), for order confirming trust assets (§ 850, subd. (a)(3)), and for the payment of attorney's fees.

---

[2] A pour-over will works in conjunction with a trust by enabling any portion of the decedent's estate not already included in the trust to become a trust asset, and to be distributed to the trust beneficiaries on the terms provided by the trust. (See, e.g., *Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, disapproved on other grounds in *Bernard v. Foley* (2006) 39 Cal.4th 794, 816, fn. 14.)

[3] All further undefined statutory citations are to the Probate Code unless otherwise indicated.

In response, David alleged that there was a written agreement between he, Susan, and Michael specifying an alternative distribution of the trust's property (the sibling agreement).

### *David's Removal as the Successor Trustee*

On May 13, 2016, the probate court granted Susan's petition to remove David as the successor trustee and appointed the Fresno County Public Administrator (FCPA) as the successor trustee. The order instructed the FCPA to begin probate proceedings to address Susan's remaining petitions. The parties were instructed not to take any action related to property of the trust, including completion of any remodeling.

On December 8, 2016, the probate court granted Susan's petition for an accounting of the trust's assets (§ 17200, subd. (b)(7)).

On February 17, 2017, David filed an accounting with the court.

On November 29, 2017, the court declined to approve David's accounting.

On December 29, 2017, the FCPA, at the direction of the probate court, filed a petition for surcharge against David for breach of fiduciary duty. The FCPA's petition alleged that the trust owned the Alamos property and the Villa property; that Michael, who lived at the Alamos property, should have been paying rent for the duration of his occupancy; and that David should be surcharged against trust distributions to him.

On February 14, 2018, the probate court held that there would be a trial on the FCPA's petition for surcharge, and to determine the assets owned by the trust.

On April 5, 2022, following multiple continuances, a court trial commenced on the petitions. The trial concluded on April 12, 2022.

On October 7, 2022, the probate court announced its tentative ruling, finding in favor of Susan. Susan's trial counsel prepared a proposed statement of decision at the court's request.

On January 31, 2024, the court filed its statement of decision.

On February 5, 2024, judgment was entered.

4.

A timely notice of appeal followed.

***Background Regarding Real Properties***

### 1. The Alamos Property

Amos purchased the Alamos property before he created his will and trust. The terms of the trust provided that the Alamos property would be distributed to Susan upon Amos's death, while David and Michael would receive equivalent payments based on the property's appraised value.

Between 2009 and September 2020, Michael was living in the Alamos property. It is undisputed that David failed to charge or collect rent on this property during this time.

On May 13, 2016, the same day that the FCPA was appointed as the successor trustee, the probate court ordered the parties not to take any action regarding the properties. However, Susan did not record a document indicating that David was no longer the trustee, which would have served as notice that he lacked the authority to sell property potentially belonging to the trust.

On September 21, 2020, David, holding himself out as the "Successor Trustee" for the trust, executed a deed transferring title to the Alamos property to Varo-Real Investments. David had attempted to sell the property to an investment group. Susan was unable to stop the sale of the property but was able to stop funds from being transferred to David.

The property was never transferred to Susan. David testified that this was because Amos had intended for Michael to receive the Alamos property.

### 2. The Villa Property

On December 31, 2003, Amos acquired the Villa property. At the time of his death, Amos held the property in his individual capacity rather than in the name of the trust. However, Amos's will contains a pour-over provision.

Subdivision (d) of Article III of Amos's will provides: "I give, devise and bequeath all of the rest, residue and remainder of my estate unto the Trustee then acting as Trustee under that certain Trust Agreement designated as the AMOS DER TOROSIAN TRUST bearing the same date as this will, of which I am the Trustor and Trustee, to be combined with other assets of said Trust and held, administered and distributed as a part of that Trust, according to the terms thereof and any amendments made to it prior to my death."

In 2009, David began living at the Villa property. He did not pay rent during his occupancy, which continued until the court trial.

On January 30, 2015, David, holding himself out as "Administrator for Amos Der Torosian," executed a grant deed transferring the Villa property to himself (the wild deed). David never opened probate for Amos's estate, and never served as administrator of Amos's estate.

Susan requested that the court cancel the "wild deed." Her petition asserted that pursuant to the provisions of Amos's pour-over will, the property should be confirmed an asset of the trust.

David maintained that he and Amos had executed a lease-option agreement in 2004, wherein he agreed to pay $2,000 for four years with the option to purchase the property thereafter. And, pursuant to the terms of that agreement, he owned title to the Villa property.

## DISCUSSION

### I.    Statute of Limitations

David contends that Susan's petitions were time-barred because she failed to bring an action for breach of fiduciary duty within four years of the date that the statute of limitations was triggered. We find that his claim lacks sufficient argument or evidence.

6.

## A. Background

On July 19, 2021, David filed a motion for dismissal. The statutory basis of his motion is unclear.

On September 30, 2021, the court denied David's motion on procedural and substantive grounds.

On March 10, 2022, David filed a motion to dismiss the "entire action," citing Code of Civil Procedure sections 583.410 (discretionary dismissal for delay in prosecution) and 583.310 (mandatory dismissal for not bringing an action to trial within five years). In a written order, the court declined to set a hearing on the motion, ruling that it was untimely under both statutes.[4] The court further observed that the parties had previously agreed to continue the trial on two prior occasions, including on September 14, 2021, and February 1, 2022.

On June 7, 2022, David filed a motion for nonsuit. Among other arguments, David asserted that Susan's petition should be dismissed because the case had not been brought to trial within five years of the date that her petition was filed (see Code Civ. Proc., § 583.110), and because she did not file her petition within three years of the date that an "interim or final account in writing" was provided to her (see § 16460, subd. (a)(1).) David argued that the sibling agreement constituted a written account that adequately disclosed the existence of a claim against him for breach of trust. However, Susan's petitions were not filed until 2015, more than three years after the agreement had been executed and provided to Susan and Michael.

---

[4] California Rules of Court, rule. 3.1342(a) provides: "A party seeking dismissal of a case under Code of Civil Procedure sections 583.410-583.430 must serve and file a notice of motion at least 45 days before the date set for hearing of the motion. The party may, with the memorandum, serve and file a declaration stating facts in support of the motion. The filing of the notice of motion must not preclude the opposing party from further prosecution of the case to bring it to trial."

David's motion was submitted to the court on March 10, 2022, and his trial was set for March 29, 2022.

On June 13, 2022, Susan filed an opposition to David's motion for nonsuit.

On June 25, 2022, the probate court denied David's motion in a written order. The court concluded that the five-year deadline under Code of Civil Procedure section 583.310 had not elapsed "due to the numerous extensions and/or continuances agreed to between the parties" and that there were "numerous periods when it was impossible, impracticable, and/or futile to bring the action to trial." The court further concluded that the sibling agreement, signed on April 8, 2010, did not trigger the three-year statute of limitations under section 16460, because the document failed to "provide notice of facts that reasonably disclose the existence of a claim against David." As a result, the statute of limitations had not begun to run.

### B. Standard of Review

"The trial court has wide discretion in ruling on a motion to dismiss for lack of diligent prosecution and its decision will not be reversed absent an abuse of discretion. [Citation.] 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. [Citations.]' [Citation.] A trial court's decision to deny a motion to dismiss is not as closely scrutinized on appeal as a decision to dismiss because the law favors decisions on the merits." (*Maggio, Inc. v. United Farm Workers* (1991) 227 Cal.App.3d 847, 884.)

On appeal, the lower court judgment is presumed to be correct, and the appealing party bears the burden of affirmatively demonstrating error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) To demonstrate error, " 'an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his [or her] claim.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204.) " '[I]t is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Ibid.*)

8.

### C. *Applicable Law*

Subdivision (a)(1) of section 16460 provides that "[i]f a beneficiary has received an interim or final account in writing, or other written report, that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after receipt of the account or report."

Under subdivision (a)(2) of section 16460, if the beneficiary receives a written account or report that is inadequate or insufficient, the claim for breach of trust is barred "unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim."

In addition to the statutory grounds for dismissal above, the court has inherent authority to dismiss an action for the failure to diligently prosecute a claim. (See Code Civ. Proc., § 583.420.)

### D. *Analysis*

David initially contends that Susan had four years from February 17, 2017, the date his accounting was filed with the court, "to bring an action for breach of fiduciary duty." The applicable statute of limitations to bring a claim for a breach of fiduciary duty is three years. (See § 16460; see also, *Noggle v. Bank of America* (1999) 70 Cal.App.4th 853, 859 [" 'The three-year statute of limitations under subdivision (a)[of section 16460] is applicable to all claims for breach of trust and the four-year statute of Code of Civil Procedure [Section] 343 is inapplicable.' "].)

Susan filed her petition alleging that David breached his fiduciary duty as the successor trustee *before* David submitted his accounting. Subsequently, the FCPA's petition to surcharge David was filed on December 29, 2017—less than one year after David furnished his accounting. Based on these facts, we find no violation of section 16460. Section 16460 only requires that a proceeding to initiate a claim must commence within three years; it does not require the claim to be brought to trial within three years.

9.

David alternatively submits that the sibling agreement, executed on April 8, 2010, commenced the applicable statute of limitations. He further contends: (1) the documents related to the trust "were available for viewing at any time," and thus, Susan was fully informed of changes made to the trust and issues related to the accounting of the trust; (2) Susan knew of improper cash distributions David had made during the time that he served as successor trustee since she was the recipient of one of these distributions, and that these distributions triggered the statute of limitations; and (3) the sibling agreement represented a valid modification of the terms of the trust. For the reasons discussed below, we conclude that none of David's arguments support his assertion that Susan's petition was untimely.

First, the record contradicts David's claim that the trust beneficiaries had unfettered access to review the trust records. Regardless, a beneficiary's unfettered access to trust records is not a statutory basis for triggering the statute of limitations. David's claim is also belied by the fact that the sole accounting furnished by him was not provided until February 2017, more than a year after Susan filed a petition to compel an accounting. The court did not accept the accounting he submitted. As the lower court explained, these records were not sufficiently clear to have put the beneficiaries on notice of potential claims against David. (See § 16460, subd. (a)(1).)

Second, although David contends that Susan should have been aware of a potential claim against him for breach of trust based on improper cash distributions she received, his argument is not sufficiently developed. Specifically, David does not cite competent evidence in the record to establish *when* Susan received such distributions. To the extent that David relies upon the sibling agreement to support his claim, David also acknowledges that Susan denied ever seeing or signing the five-page document.[5]

---

[5] Susan contends that at the bench trial, she testified that the sibling agreement is not the same document that she had previously signed.

While David maintains that Susan's contentions are false, the probate court concluded otherwise. On appeal, we do not reweigh evidence or reassess the credibility of witnesses. (See *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623.) Nor can we "[a]ct upon a mere assertion of an appellant in his brief as to matters not shown by the record." (*County of Nevada v. Phillips* (1952) 111 Cal.App.2d 428, 430.)

Finally, David's assertion that the sibling agreement represented a valid modification of the trust is contrary to the probate court's conclusion. The probate court concluded that neither Amos's trust or his will were ever revoked or modified, implicitly determining that the sibling agreement did not represent a valid amendment of those instruments. We conclude that David's assertion that Susan failed to bring her action within the applicable statutory period is unsupported by sufficient argument or evidence.

We further observe that, on appeal, David does not argue that the probate trial was untimely pursuant to section 583.310.[6] Under Code of Civil Procedure section 583.310, "An action shall be brought to trial within five years after the action is commenced against the defendant." During the relevant proceedings in this case, the Judicial Council issued 11 emergency rules in response to the COVID-19 pandemic, including a rule extending the five-year period to bring a civil action by six months. (See *Barron v. Santa Clara County Valley Transportation Authority* (2023) 97 Cal.App.5th 1115, 1123; Cal. Rules of Court, Appen., Emergency rule 10(a).) The emergency rule applied to all civil actions filed before April 6, 2020, and remained in effect until June 30, 2022. (*Id*., Emergency rules (a), (c).) The five-year six-month limitation period could also be

---

[6] Even if he had argued as much, the record before us is inadequate to allow a determination as to whether the statute of limitations under Code of Civil Procedure section 583.310 was properly tolled or extended. When using a clerk's transcript, the notice designating the record on appeal must identify each document "by its title and filing date or, if the filing date is not available, the date it was signed." (Cal. Rules of Court, rule 8.122(a)(1).) It does not appear that in designating his record on appeal, David included all court minute orders from the proceedings below.

11.

extended by stipulation of the parties (see Code Civ. Proc., § 583.330, subds. (a), (b)), or where "[b]ringing the action to trial … was impossible, impracticable, or futile" (Code Civ. Proc., § 583.340, subd. (c)).

In opposing David's motion for nonsuit, trial counsel below argued that Susan's trial was timely under the statute of limitations because the limitations period had been extended by stipulation of the parties and tolled on multiple occasions. On appeal, David does not contend that the probate trial was untimely pursuant to Code of Civil Procedure section 583.310. Accordingly, the issue is deemed forfeited. (See *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["The appellate court is not required to search the record on its own seeking error"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [an appellate brief must support points by argument and citation to authority]; *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"].)

We are cognizant that David appears without counsel, but self-represented litigants are not exempt from the rules governing appeals. Indeed, self-represented litigants are afforded " 'the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) Based upon the foregoing, we conclude that David has failed to demonstrate that the court erred in concluding that Susan's claims were timely filed and prosecuted.

## II. The Trust's Title to Certain Real Property

According to David, the lease-option agreement he and Amos executed granted him ownership of the Villa property. Following the trial below, the court concluded that the Villa property was an asset of the trust pursuant to the terms of Amos's pour-over will. We conclude that substantial evidence supports the court's conclusion.

12.

### A. Standard of Review

We review the trial court's resolution of disputed facts for substantial evidence. (*De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315.) In so doing, we accept all evidence that supports the prevailing party, disregard the contrary evidence, and draw all reasonable inferences to uphold the judgment. (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.) "[I]t is not our role to reweigh evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." (*Ibid.*)

### B. Analysis

In determining that the Villa property was an asset of the trust, the probate court implicitly denied David's claim that he had validly purchased this property from Amos through a lease option agreement. Although David disagrees with the lower court's decision, he does not direct this court to competent evidence in the record to support his assertion.

For instance, David alleges that during Susan's testimony, she admitted that the Villa property belonged to him, and that Michael provided similar testimony. We cannot substantiate his claim as David has not supplied this court with copies of the reporter's transcripts from the trial below. Assuming such testimony was given however, we presume the court took it into account but ultimately found it unpersuasive given the quantum of evidence demonstrating that the Villa property in fact belonged to Amos's estate. The lower court has exclusive authority to evaluate the weight of the evidence, to draw inferences therefrom, and to assess witness credibility, with all presumptions favoring the judgment on appeal. (See *In re Capolino's Estate* (1949) 94 Cal.App.2d 574, 576-577.)

With respect to the handwritten lease-option agreement, it is unclear whether this document was properly authenticated, the grounds on which it was admitted at the court

13.

trial below, or whether David fulfilled the terms of the agreement.[7]  Additionally, the record contains no evidence showing that a deed transferring the property from Amos to David was ever executed or recorded.  Practically speaking, it was unreasonable for David to assume that title to the Villa property had been lawfully acquired by him, and that he had the authority to transfer it to himself.

In contrast, substantial evidence supports the probate court's conclusion that the Villa property belonged to the trust.  The pour-over provision in Amos's will explicitly states that "all of the rest, residue and remainder of [the] estate" would be devised and bequeathed to the trust.  This provision necessarily includes the Villa property, which was purchased after Amos executed his will and trust.  In the absence of competent evidence to the contrary, Amos's pour-over will reflects his intent to devise the Villa property to the estate.  (See *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [" ' "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible." ' "].)  We conclude that David has failed to demonstrate that the probate court erred by concluding that the Villa property was an asset of the trust.

## III.    David's Breach of Fiduciary Duty as Successor Trustee

David served as the successor trustee from April 8, 2009, until his removal by the court on May 13, 2016.  Following a bench trial, the probate court ratified that order of removal, finding that David had breached his fiduciary duty, and that he should be surcharged for damages proximately caused by his breach.  Again, finding no reversible error, we affirm the probate court's findings.

---

[7]  In her opposition to David's motion for nonsuit, Susan asserted that the lease-option agreement was admitted at the court trial for a limited purpose.

### A. Standard of Review

" 'The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.' " (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300.) The court's determination of whether a fiduciary breached their duty is a factual finding reviewed under the substantial evidence standard. (*Penny v. Wilson* (2004) 123 Cal.App.4th 596, 603.)

### B. Applicable Law

"The grant of a power to a trustee…does not in itself require or permit the exercise of the power. The exercise of a power by a trustee is subject to the trustee's fiduciary duties." (§ 16202.)

Unless the trust instrument contains clear and unequivocal to the contrary, a trustee's fiduciary duties include, as relevant here: the duty to administer the trust according to the trust instrument (§ 16000); the "duty to administer the trust solely in the interest of the beneficiaries" (§ 16002, subd. (a)); the "duty not to use or deal with trust property for the trustee's own profit or for any other purpose unconnected with the trust, nor to take part in any transaction in which the trustee has an interest adverse to the beneficiary" (§ 16004, subd. (a)); a duty "to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property" (§ 16006); and a duty "to make the trust property productive under the circumstances and in furtherance of the purpose of the trust" (§ 16007).

"A violation by the trustee of any duty that the trustee owes the beneficiary is a breach of trust." (§ 16400; *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 888.) The standard for evaluating a trustee's actions is set forth in subdivision (a) of section 16040, which states: "The trustee shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like

15.

capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument."

### C. Analysis

#### 1. Failure to Adhere to Trust Terms (§ 16000)/Unauthorized Distribution of Trust Property

The express terms of the trust state that the Alamos property must be transferred to Susan. However, the undisputed facts demonstrate that not only did David fail to effect this distribution, he sold the property to an investment group in 2020. It is also undisputed that David held himself out as the successor trustee on the grant deed, despite having been removed from this role in 2016.

Although David claimed that Michael owned the Alamos property, the court concluded otherwise. David does not offer argument or evidence supporting his claim that the court erred in reaching its conclusion.

Likewise, David offers insufficient argument to support his assertion that he owned the Villa property under a lease-option agreement. The court determined that Amos's will, which had not been revoked or amended, directed all residual estate property to pour over into the trust upon Amos's death. This would include the Villa property, which was held in Amos's name at the time of his death. The court further concluded that the "wild deed" David executed to transfer the property to himself was "invalid and should be cancelled." In reaching this conclusion, the court considered the lease-option agreement but implicitly found it unpersuasive. Once again, David fails to demonstrate any error in the court's decision.

#### 2. Failure to Make Trust Assets Productive (§§ 16006-16007)

The following facts were undisputed: David resided at the Villa property from April or May 2009 until the time of the court trial on Susan's petitions, without paying rent. Similarly, Michael occupied the Alamos property from April or May 2009 until

16.

September 2020, when David sold the property to the Varo-Real Investment Group. Michael also did not pay rent at any time during his occupancy.

A fiduciary has a "duty to make the trust property productive under the circumstances and in furtherance of the purposes of the trust." (§ 16007.) This duty may include collecting the reasonable value of rent on a real property that is owned by the trust. (See, e.g., *Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 290 [trustee's failure to promptly sell real property owned by the trust and to collect rent on the property in the interim constituted conduct that fell "below the standard of care required of a trustee by the Probate Code"].) Substantial evidence demonstrates that David's failure to collect rent on the trust-owned properties for over a decade constitutes a clear breach of his fiduciary duty, as it deprived the trust of income and fell below the standard of care required of a trustee.

### 3. Failure to Enforce Claims (§ 16010)

At the time of his death, Amos held title to the Villa property in his personal capacity, rather than in the name of the trust. As the successor trustee, David never attempted to secure title in the Villa property for the trust by initiating probate proceedings. "The trustee has a duty to take reasonable steps to enforce claims that are part of the trust property." (§ 16010.)

By failing to take any action to secure title to the Villa property for the trust, rather than for himself, David violated his fiduciary duty to preserve and protect trust assets. Insofar as David contends that he did not pay rent while living in the Villa property because he owned the property, the court rejected his claim. We have already addressed his claim in part II *ante*. We therefore need not and do not repeat our analysis.

## IV. The Nature and Extent of the Damages

Although David does not dispute the probate court's computation of damages, he maintains that he acted reasonably and in good faith throughout his tenure as successor trustee, a factor relevant to determining liability for breach of fiduciary duty. He further

17.

contends that the probate court erred by denying his claim for credit based upon improvements he made to the Villa property.  We find both claims meritless.

### A. Applicable Law/Standard of Review

The Probate Code offers trust beneficiaries a wide array of remedies to address an actual or a potential breach of trust.  (See § 16420, subd. (a)(1)-(9).)  Those remedies include "remov[ing] the trustee" and "compel[ling] the trustee to redress a breach of trust by payment of money or otherwise."  (§ 16420, subd. (a)(3) & (5).)  The reference to payment of money " 'is comprehensive and includes liability that might be characterized as damages, restitution, *or surcharge*.' "  (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1068.)

We review the surcharge orders to a trustee under the deferential standard of abuse of discretion.  (*Estate of Moore* (2015) 240 Cal.App.4th 1101, 1105.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  The facts underlying a surcharge order are reviewed for substantial evidence.  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 987.)

### B. Analysis

### 1. David's Claim That He Had Acted Reasonably and in Good Faith

David contends that he had acted reasonably in good faith under the circumstances.  Under the Probate Code, the court may excuse a trustee acting reasonably and in good faith from liability in whole or in part for breaches of fiduciary duty.  (See §§ 16440, subd. (b) [if a trustee has committed a breach of trust, but "has acted reasonably and in good faith under the circumstances as known to the trustee, the court, in its discretion, may excuse the trustee in whole or in part from liability under [section 16440, subdivision (a)] if it would be equitable to do so"]; 16441 subd. (b) [same, but applying to liability for interest resulting from a breach of trust]; see e.g., *Orange*

*Catholic Foundation v. Arvizu, supra*, 28 Cal.App.5th at p. 295 [the choice of relief in a trust dispute, including whether to apply section 16440, subd. (b), "is properly left to the trial court for determination and generally should not be disturbed on appeal"].)

We conclude that the record does not support David's assertion that he acted reasonably and in good faith when he breached his fiduciary duty. Title to the Villa property had not been settled when he transferred this property to himself. Additionally, David attempted to sell the Alamos property to an investment group, even though the court ordered no further action be taken with respect to the properties. David also falsely held himself out as the personal administrator of Amos's estate in 2015, and as the successor trustee for Amos's trust in 2020, when he attempted to sell the Alamos property to an investment group. Based upon the foregoing, we conclude that David has failed to demonstrate that he should be excused from any portion of the damages from his breach of duty based upon his assertion that he had acted in good faith.

### 2. *David's Entitlement to Credit for Improvements to the Villa Property*

During the time that David occupied the Villa property, he made various improvements to it. He argues that the value of the improvements should be deducted from any surcharge against him, or that they should otherwise be credited to him. On appeal, David requests that this court remand the matter back to the lower court so that he may provide evidence showing the value of these improvements.

The record demonstrates that the probate court gave David ample time to furnish records and receipts supporting the value of the improvements made to the Villa property, but he was unable to produce complete records. Further, the records that were provided do not support his claim that the expenditures documented were for improvements to the property. David provides neither argument nor evidence demonstrating how the probate court erred in declining to give him more time to furnish additional documents to support his claim. We therefore conclude that remand is not warranted.

### a. Background Regarding Credits for Improvements

On October 7, 2022, the probate court announced a tentative decision in favor of Susan following the trial on her petitions. At the hearing, and for the first time during the proceedings below, David asserted that he was entitled to credit for improvements he made to the Villa property. The court set a status hearing on David's claim so that he could produce records in support of his claim for credit.

On December 9, 2022, David failed to produce records supporting his claim for credit. The court ordered David to produce any and all supporting documents to Susan's trial counsel, who would be given the opportunity to make objections to the documents produced.

On December 23, 2022, Susan's attorney filed a notice of failure to produce documents and waiver of claim.

On February 8, 2023, the court, again, ordered David to produce documents to support his claim for credits. In a written order, the court required David to "serve and file paper copies of any and all documents which support his claim for credits for improvements to the [Villa property]" by March 3, 2023.

On June 16, 2023, after no such documents had been filed, the court gave David a final opportunity to file documents supporting his claim, by July 7, 2023. The court also set a briefing schedule for the parties to file any objections, as well as a response.

On July 7, 2023, David filed a motion seeking additional time to file documents with the court. Opposing counsel filed a motion objecting to David's response.

On September 14, 2023, a hearing on the matter occurred. Prior to the hearing, David attempted to file documents with the court that had been copied onto a flash drive, but the court could not accept the flash drive. The parties agreed that copies of David's documents would be copied at opposing counsel's place of business.

On September 15, 2023, David brought a total of 654 pages to opposing counsel's practice. Trial counsel's staff assisted him with making copies of these documents.[8] In a motion subsequently filed with the court, David contends that these were only a fraction of the documents supporting his claim, and that he was scheduled to return to copy the remainder of his documents. However, when he returned on September 20, 2023, a partner at the law firm advised David that the time for filing his documents had expired on September 15, 2023.

On October 6, 2023, a hearing was scheduled to occur on David's motion. David failed to attend this hearing.

On October 26, 2023, David filed a motion requesting additional time to support his claim for credits.

On January 31, 2024, the court filed its judgment. With respect to David's claim for credits, the court found that David had "failed to carry his burden of proof regarding the value of any such improvements to the Villa Property," and consequently, he "should receive no credit or offset for any such amounts."

### b. Analysis

Between December 16, 2022, and September 15, 2023, David was unable to provide complete copies of receipts detailing improvements made to the Villa property. Because he was given ample opportunity to provide these records to the court and counsel, we decline to remand the matter back to the lower court to provide him with additional time to furnish these records.

---

[8] Susan's trial counsel filed evidentiary objections to these documents, and argued that the documents provided did not support David's claim for credits based upon improvements made to the Villa property.

**V.     The Probate Court's Failure to Resolve Material Issues of Fact/Inadequate Record on Appeal**

Finally, David asserts that the court failed to resolve material issues of fact, including:  the status of the Villa property, and findings of fact relevant to Amos's intent to include that property in the trust; whether he had "abused the discretion granted to him by the trust instrument;" and whether the sibling agreement represented a valid modification of the trust.

David further contends that the record on appeal is inadequate, and that reversal of the court's order is required on this basis.  We find his claims meritless.

*A.  The Court's Statement of Decision*

In a bench trial, upon a timely request by a party, the court is required to render "a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial."  (Code Civ. Proc., § 632.)  "A statement of decision is as much, or more, for the benefit of the Court of Appeal as for the parties.  It 'is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law.' "  (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010.)

A court's statement of decision is sufficient if it fairly discloses the court's legal and factual basis for determining the ultimate facts and material issues in the case.  (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500; *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 [ultimate facts are "core" facts, such as elements of a claim or defense, and are distinguishable from evidentiary facts and bare conclusions of law].)  However, if "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court…prior to entry of judgment…it shall not be inferred on appeal…that the trial court decided in favor of the prevailing party as to those facts or on that issue."  (Code Civ. Proc., § 634.)

A "party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party....  [I]f a party does not bring such

deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient ... and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

Our independent review of the court's statement of decision here fails to disclose any significant deficiencies.[9] The probate court is clear and unambiguous, and the court resolved all "core" material facts and issues. "[A] trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case." (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118.)

We further observe that David failed to lodge a timely and specific objection to the court's statement of decision below. The doctrine of implied findings therefore applies, requiring us to construe all implied factual findings in Susan's favor, as she was the prevailing party. (See *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) Based upon the foregoing, we conclude that the court's statement of decision is not fatally deficient.

### B. Adequacy of the Record on Appeal

David submits, without explanation, that the record on appeal is inadequate. Our records show that he filed a motion to proceed with his appeal using a settled statement,

---

[9] Some of the dates for events recited in the court's judgment after trial and its statement of decision must be amended, including, the date that David was removed as the successor trustee, which incorrectly reflects that he was removed on May 13, 2015, rather than in 2016, as well as the date that the grant deed was executed transferring the Alamos property to David and then to the Varo-Real Investment Group. The grant deeds were executed in 2020, not in 1999. We will modify the judgment to correct these clerical errors. (See *Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506 ["It is well-settled that clerical errors in a judgment, where they are shown by the record, may be corrected at any time].)

asserting that multiple proceedings were neither reported nor transcribed. However, his motion was denied because he failed to establish his claim.[10]

As the party challenging a discretionary ruling, David had an affirmative obligation to provide an adequate record to allow for meaningful appellate review of his claims. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141; see also Cal. Rules of Court, rule 8.120(b) [it is appellant's burden to provide a reporter's transcript, an agreed statement, or a settled statement, if an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court].) "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*." (*Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) "The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid*.) Accordingly, any inadequacy of the record must be construed against David, not in his favor.

## DISPOSITION

The probate court's judgment entered on February 5, 2024, is affirmed with the following modifications:

The document titled, "Judgment After Trial By Court," signed on January 31, 2024, is amended to state:

> "3. David Torosian was properly removed as successor trustee of the Amos Der Torosian Trust on May 13, 2016, by Judge Deborah Kazanjian of the Fresno County Superior Court, and such removal is hereby approved and ratified."

---

[10] The probate trial was recorded and transcribed, and it appears that these transcripts were available, as Susan's trial counsel was able to obtain copies.

The document titled, "Statement of Decision," signed on January 31, 2024, is modified as follows:

Under the section entitled, "6. FACTUAL FINDINGS," the following revisions are made:

"4.  David Torosian served as successor trustee of the Amos Der Torosian Trust from the date of death of Amos Der Torosian until May 13, 2016, when he was removed as successor trustee by Judge Deborah Kazanjian of the Fresno County Superior Court."

"8.  On September 21, 2020, David Torosian executed a grant deed for the Alamos Property, from 'David Der Torosian as Successor Trustee under that Certain Trust Agreement dated September 8, 1999, creating the " 'Amos Der Torosian Trust,' " as Grantor, to Varo-Real Investments, Inc., as grantee."

"9.  On September 21, 2020, when he executed the grant deed for the Alamos Property, transferring the same to Varo-Real Investments. Inc. David Torosian was not the successor trustee of the Amos Der Torosian Trust, and David Torosian had no authority to execute the deed or to transfer the Alamos Property."

All other portions of the Judgment After Trial By Court and Statement of Decision not expressly altered by this disposition remain in effect and unaltered.

Respondent Susan Patten shall recover her costs on appeal.

SMITH, J.

WE CONCUR:

DETJEN, Acting P. J.

PEÑA, J.

25.